UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DOMINIQUE ALEXANDER, § § *Plaintiff*, § § v. § § DAVID BROWN; POLICE OFFICER § DOES 1–5; and CITY OF DALLAS § TEXAS, § § *Defendants*. § § | Civil Action No. 3:18-CV-02101-X |

# MEMORANDUM ORDER AND OPINION

Plaintiff Dominique Alexander alleges that he was falsely arrested by Dallas Police officers, at the direction of Police Chief David Brown, in retaliation for organizing protests criticizing the Dallas Police. Alexander sued Chief Brown, five unnamed police officers, and the City of Dallas under 42 U.S.C. § 1983, alleging violations of his First, Fourth, and Fifth Amendment rights as well as a failure by Chief Brown and the City to properly train and supervise the officers. Brown and the City jointly moved for summary judgment [Doc. No. 58]. Alexander did not respond to this motion, even though the Court granted extensions of time to respond [Doc. No. 62, 64] and ordered him to show cause for the lack of a response [Doc. No. 68]. The motion is ripe. For the reasons outlined in this order, the Court **GRANTS** the motion for summary judgment.

## I. Factual Background

Alexander is a "Black Lives Matter" organizer, whose organization planned the July 2016 march in downtown Dallas where a sniper killed five police officers and wounded several more. Alexander organized more public demonstrations in the weeks after the shooting, including a sit-in at a Dallas City Council Meeting and another march through downtown Dallas. Alexander contacted Chief Brown about the possibility of holding a private meeting to discuss police reform. Chief Brown accepted on the condition that Alexander relocate the downtown marches to locations "more tactically advantageous to officer safety."[1] Alexander refused to relocate the march.

Alexander later attended the City Council Meeting sit-in, acted in a manner that prompted his removal by the sergeant-at-arms, and was escorted out of the building by City security officers. Once outside, Alexander encountered two Dallas Police officers who were dispatched to City Hall in response the disturbance. The officers checked Alexander's identification and learned that he had an outstanding arrest warrant in Collin County and nine outstanding traffic-related Dallas Police Department arrest warrants. The officers arrested Alexander. Alexander was held in Dallas County custody overnight and released the next morning after satisfying the Collin County warrant. Alexander then sued five unnamed "John Doe" officers, Chief Brown, and the City of Dallas under section 1983 for violations of his First,

---

[1] Doc. No. 59 at 9.

Fourth, and Fourteenth Amendment rights and a failure by Chief Brown and the City to properly train and supervise the officers.

## II. Legal Standards

Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the non-moving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] "A fact is material if it 'might affect the outcome of the suit'" and "[a] factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[3] Courts "resolve factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[4] Thus, "the nonmoving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence."[5] A party asserting that a fact cannot be genuinely disputed may support its assertion by showing that the materials cited do not establish the presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.[6]

But qualified immunity affects that typical process. The purpose of qualified immunity is to protect government officials from suit and liability for civil damages

---

[2] FED. R. CIV. P. 56(a).

[3] *Thomas v. Tregre*, 913 F.3d 458, 462 (5th Cir. 2019) (alteration in original) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[4] *Antoine v. First Student, Inc.,* 713 F.3d 824, 830 (5th Cir. 2013).

[5] *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (quotation marks omitted).

[6] FED. R. CIV. P. 56(c)(1)(B).

"insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[7] Thus qualified immunity "alters the usual summary judgment burden of proof."[8] Courts continue to draw all factual controversies in favor of the nonmovant, but once a government official asserts the defense of qualified immunity, the burden shifts to the plaintiff to show that the defense is not available.[9] A plaintiff seeking to defeat qualified immunity must show genuine disputes of material fact about (1) whether the official violated a statutory or constitutional right, and (2) whether the right was clearly established at the time of the challenged conduct.[10]

The First Amendment prohibits government retaliation against protected speech, the Fourth Amendment protects against unreasonable seizures (including arrests), and the Fourteenth Amendment's due process clause prevents unequal treatment by state actors based on viewpoint. Thus, the Court must determine whether, viewing the summary judgment evidence in the light most favorable to Alexander, the individual defendants violated Alexander's constitutional rights to be free from retaliation, unreasonable seizure, and unequal treatment, and whether the defendants' actions were objectively unreasonable in light of clearly established law at the time of the conduct in question.[11] This is a high hurdle because qualified

---

[7] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[8] *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

[9] *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010).

[10] *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016).

[11] *Kingsley v. Hendrickson*, 576 U.S. 389, 391–92 (2015).

immunity protects "all but the plainly incompetent or those who knowingly violate the law."[12]

### III. Application

#### A. First, Fourth, and Fourteenth Amendment Claims

Alexander mainly accuses Chief Brown of violating his Fourth, First, and Fourteenth Amendment rights by ordering the defendant officers to falsely arrest him specifically because he held opposing views on police reform and expressed those views in public. Here, Chief Brown argues that there is no evidence that he ordered, commanded, directed, suggested, or otherwise participated in or caused Alexander's arrest. By neglecting to respond to this contention, Alexander failed to establish a genuine dispute of material fact on whether Chief Brown violated his constitutional rights or clearly established law. Therefore, Chief Brown is entitled to qualified immunity from these alleged but unsupported constitutional violations. Accordingly, the Court grants summary judgment to Chief Brown on these claims.

#### B. Failure to Train and Supervise

Alexander also sued Chief Brown under section 1983 for failure to properly train and supervise the officer defendants. To maintain a failure to train or supervise claim against a supervisory official who was not personally involved in the alleged wrongdoing, the plaintiff must show that: "(1) the [official] failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure

---

[12] *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights."[13]

Here, Chief Brown argues that there is no evidence to establish any specific deficiencies in the officers' training or supervision that caused the alleged violations of Alexander's constitutional rights. Alexander did not respond and thereby failed to establish a genuine dispute of material fact that a causally related deficient training or supervision existed. The Court grants summary judgment to Chief Brown on this claim.

### D. Entity Liability

As a municipality, the City of Dallas can only be liable under section 1983 where the "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."[14] An "official policy" is:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality

---

[13] *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

[14] *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978).

or to an official to whom that body had delegated policy-making authority.[15]

When relying on prior unconstitutional incidents to show a widespread practice, the incidents "must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees."[16]

Here, the City argues that it is entitled to summary judgment because there is no evidence of an official policy that may have caused the alleged violation of rights or failure to train. Alexander failed to respond and therefore failed to establish a genuine dispute of material fact that a causally related policy existed. Therefore, the Court grants summary judgment to the City of Dallas on this claim.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Chief Brown and the City's joint motion for summary judgment and **DISMISSES WITH PREJUDICE** Alexander's claims against them. The only remaining aspect of this case is the unnamed officers Alexander pled as John Does. The Court will allow Alexander fourteen days to replead his complaint and name the John Doe officers. Otherwise the remainder of this case will be dismissed for want of prosecution.

---

[15] *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc) (per curiam).
[16] *Peterson v. City of Fort Worth*, 588 F.3d 838, 850 (5th Cir. 2009).

**IT IS SO ORDERED** this 2nd day of December, 2020.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE